112 F.3d 517
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Charlotte NORADOUN, and; Edward Runyon, dba F/V SEA PEARL,
Plaintiffs-Appellants,
v.
NATIONAL MARINE FISHERIES SERVICE, Defendant-Appellee.
 No. 95-35963.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 9, 1996.
Decided April 25, 1997.
 
 Before: NOONAN, THOMPSON, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Charlotte Noradoun and Edward Runyon (appellants) appeal the district court's order granting summary judgment in favor of the National Marine Fisheries Service (NMFS). We affirm the judgment of the district court.
 
 FACTS
 
 3
 Charlotte Noradoun purchased the Sea Pearl, a Gulf of Mexico shrimping vessel, on July 13, 1987, in Florida and sailed it to Washington. On April 18, 1988, she conveyed a one-half interest to her father, Charlie Adams. Adams conveyed his one-half interest to Edward Runyon and John Kochis on December 23, 1988. Noradoun and Runyon married some time after December 23, 1988. At some point Kochis conveyed his interest to either Runyon or Noradoun and Noradoun conveyed part of her interest to Runyon; as of May 14, 1990, Runyon owned 99 percent of the Sea Pearl and Noradoun owned one percent.
 
 
 4
 Noradoun claims she intended to convert the Sea Pearl to a groundfish trawling vessel when she sailed it to Washington. During June or July of 1988, Noradoun orally ordered nets and doors. There is conflicting evidence of the purpose of that equipment. Runyon stated at a hearing before the Permit Review Board (Board) that Noradoun ordered trawl doors. A declaration from the vendor states that the order was for trawl gear. A suit filed against Adams and Noradoun by Pierre Marchand, who had guaranteed the purchase, states that the order was for shrimp trawls. A receipt issued at the time reveals Noradoun ordered doors but does not specify the type of doors. A payment of $4,400 was made on August 12 or 19, 1988. Appellants claim that conversion began in 1987 and ended in 1989.
 
 
 5
 Landing records reveal that the Sea Pearl fished for shrimp from May 27, 1988 through August 30, 1989 and regularly and exclusively for groundfish after May 25, 1990.
 
 
 6
 Appellants filed for a limited entry permit in the Pacific Coast Groundfish Fishery and claimed eligibility for a "provisional A" endorsement under the conversion criteria and the hardship exception. The Chief of the Fishery Management Division (Chief) denied the permit. Appellants appealed to the NMFS Regional Director (Director) and requested a hearing before the Permit Review Board (Board). After accepting additional evidence and conducting a hearing, the Board voted unanimously to deny the permit. Before the Director issued his decision, appellants submitted additional evidence, including a report by Barbara Milam, M.S.W., in which Milam concluded Noradoun suffered from depression and Dependent Personality Disorder because she was dominated by her abusive and alcoholic father, Adams, who owned half of the boat during the 1988 season. Milam concluded that Noradoun's condition caused the delay in conversion. NMFS also received two calls from Kochis during this period in which Kochis questioned appellants' hardship claim. The Director denied the permit.
 
 
 7
 Appellants filed this action seeking review of the NMFS's denial of their permit application. They alleged the denial was arbitrary and capricious and violated their procedural due process rights. They also claimed the regulations took a property interest without sufficient notice. The district court granted summary judgment to NMFS. Noradoun and Runyon appeal.
 
 ANALYSIS
 
 8
 Appellants argue NMFS erred in denying them a limited entry permit with a "provisional A" endorsement for several reasons. We disagree. Appellants were not prejudiced by the calls from Kochis to Dr. Fricke because neither Fricke nor the Director relied on Kochis's statements and both the Chief and the Board denied the permit on other grounds before Kochis made the calls. As for appellants' argument that the Board and the Director failed to consider relevant evidence, we note that appellants bear the burden of proving eligibility for the permit and the evidence concerning the purpose of the June or July order for nets and doors is conflicting and unclear. In response to appellants' argument that the NMFS wrongly believed that the Sea Pearl needed to be converted for West Coast shrimping and therefore wrongly determined the purpose of the August, 1988 expenditures, we note that a careful reading of the memorandum written by NMFS general counsel Elizabeth Mitchell, upon which this argument relies, reveals that Mitchell's opinion was equivocal and was based on a statement made to her by Bill Robinson, the recipient of the memo.
 
 
 9
 In any case, appellants failed to satisfy other requirements for the limited entry permit they seek. Noradoun did not pay "earnest money of 10 percent or more of the value of the contract" before August 1, 1988 as required by 50 C.F.R. § 663.35(a)(1)(i). Ownership of the Sea Pearl was transferred in December, 1988, and again before May 14, 1990 contrary to 50 C.F.R. § 663.35(a)(1)(ii). The Sea Pearl made no qualified landings of groundfish during the upgrade period as required by 50 C.F.R. § 663.35(a)(1)(iv).
 
 
 10
 Appellants also argue that NMFS's conclusion that the Sea Pearl was "prosecuting vigorously a West Coast shrimp fishery," a statement NMFS denies making, was contrary to the evidence. We disagree. The Sea Pearl made landings of shrimp between May 27, 1988, and August 30, 1989. A declaration from Marchand, a fish processor in Washington, stating that the Sea Pearl was underutilized during that period because of Adams' poor management only goes to whether the Sea Pearl prosecuted a West Coast shrimp fishery "vigorously," not whether the Sea Pearl was involved in shrimping.
 
 
 11
 Finally, we agree with NMFS and the district court that appellants failed to qualify for a limited entry permit under the hardship exception, even if we assume Noradoun had the illness Milam diagnosed. The Sea Pearl fished for shrimp during 1988 when the alleged hardship occurred; failure to meet landing requirements because of the economic decision to fish for shrimp rather than groundfish is not a hardship under the regulations, 50 C.F.R. § 663.38. The argument that Adams prevented Noradoun from meeting conversion criteria sufficient to constitute "delay[ ] beyond the control of the vessel owner" fails because Adams and Noradoun co-owned the Sea Pearl during 1988 and appellants do not argue that Adams' behavior was beyond his control. NMFS's conclusion that there was no contemporaneous evidence of intent to participate in the groundfish fishery finds support in the record. Even if the failure to begin conversion was caused by a hardship within the meaning of the regulations, appellants failed to qualify for a permit because ownership of the Sea Pearl changed between August 1, 1988, and the date of permit application, a change appellants do not argue was caused by hardship.
 
 
 12
 Appellants also raise substantive challenges to the regulations under which their permit was denied. Because their challenge was not brought within the jurisdictional limit Congress has established, 16 U.S.C. § 1855(f)(1), we do not address their challenges. See Norbird Fisheries, Inc. v. National Marine Fisheries Serv., No. 95-36130 (9th Cir. filed Apr. 25, 1997).
 
 
 13
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3